132 So.2d 24 (1961)
RICHARD BERTRAM & CO., Appellant,
v.
Ray E. GREEN, as Comptroller of the State of Florida, and Thomas J. Kelly, as Sheriff of Dade County, Florida, Appellees.
No. 60-434.
District Court of Appeal of Florida. Third District.
June 29, 1961.
Rehearing Denied August 2, 1961.
Smathers, Thompson & Dyer and Louis S. Bonsteel, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and Joseph Nesbitt, Asst. Atty. Gen., for appellees.
Before HORTON, C.J., and PEARSON, TILLMAN and CARROLL, JJ.
*25 PEARSON, TILLMAN, Judge.
The appellant is a Florida corporation whose business is that of a yacht broker. The transactions which are the subject of inquiry came about when the owners of certain yachts listed these yachts with the appellant for lease. The appellant found suitable lessees. The yacht owners were individuals or corporations conducting businesses unconnected with yachts. As is usual in yacht brokerage transactions, the appellant collected the rental price and remitted the amount, less commission, to the owners. These facts were stipulated.
This cause arose when the appellee-comptroller filed a notice of tax assessment against the appellant under Chapter 212, Fla. Stat., F.S.A. This chapter is entitled the "Florida revenue act of 1949"[1] and is more commonly known as the Florida Sales and Use Tax Law. After administrative proceedings which are not in issue, the appellant filed a complaint seeking a determination of the validity of the assessment and injunctive relief. After the filing of the stipulation on the facts the cause was heard upon the issue of law as to the applicability of the tax and the chancellor entered a final decree dismissing the complaint. This appeal is from that final decree.
The basis of the decree was that the appellant had failed to make it appear that it was exempted under Chapter 212, Fla. Stat., F.S.A. Therefore the sole question upon this appeal is whether or not the appellant-broker is liable for taxes under Chapter 212, Fla. Stat., F.S.A. The appellee prefers to state this question in another way: Is the broker exempted from a tax on the rentals or leases described because they are "occasional and isolated"?[2] Either question involves a decision as to the legality of comptroller's rule 37(9), which provides:
"The rental of tangible personal property cannot qualify for exemption as an occasional or isolated sale."
A reading of Chapter 212, Fla. Stat., F.S.A., convinces us that the taxes therein provided are not taxes against individuals or property, but taxes against business transactions, i.e., taxes for the privilege of engaging in a business or occupation. See Gaulden v. Kirk, Fla. 1950, 47 So.2d 567.
It is, therefore, necessary to determine whether the tax sought to be levied in the instant case is upon a taxable transaction.
An owner who makes a sale which is "occasional and isolated" qualifies for an exemption under Section 212.02(9), above quoted. This exemption is recognized by the comptroller in Rule 37.4, which provides:
"The exemption provided on isolated sales is not forfeited when the sale is made by a broker for the owner."
But the comptroller contends that this rule applies only to "sales", although the act itself defines a lease of tangible property for consideration as a "sale".[3] The *26 comptroller explains that this definition is accepted for the purpose of the determination of "taxability", but not for the determination of "exemptability". This position is fortified by the argument that Chapter 212, Fla. Stat., F.S.A., contains a statement of the legislative intent that all transactions under the chapter are taxable unless specifically exempted.[4] It is thereupon urged that the comptroller, being clothed by the legislature with the power to promulgate rules and regulations not inconsistent with the act,[5] had the authority to promulgate Rule 37.9, supra, which forbids exemption of a rental of tangible personal property as an isolated sale. Therefore, contends the comptroller, the appellant has not brought himself within an exemption of the statute.
We are unable to accept appellee's position that the section defining "sales" to include leases of personal tangible property for a consideration applies only to that portion of the act pertaining to taxability, but not to exemptability. It is apparent from a reading of the definition of "sale"[6] that a lease of tangible personal property is, in fact, a sale. When a statute contains a definition of a word or phrase, that meaning must be ascribed to the word or phrase whenever repeated in the same statute unless a contrary intent clearly appears.[7] Thus the definition of "sale" contained in Section 212.02(2) (a), supra, is controlling in determining the meaning of that word as used in Section 212.02(9),[8] supra, which defines "business" and lists transactions not to be included in the term "business". The language of the sections involved being clear and the legislative intent determinable from the definitions given in the statute, the comptroller has no power to go outside the statutory definitions and give a different meaning to the words used in the statute, even though the comptroller's construction, in his mind, would increase the revenue of the State of Florida. Although we recognize the power and duty of the comptroller in administrating this tax law to promulgate rules to enforce the assessment and collection of the taxes, we hold that he exceeded his authority by promulgating a rule which is contrary to the statute.
If the lease is then properly exempted it may not be converted into a taxable transaction by the fact that it is made through a broker. For the reasons above stated, we hold that the judgment must be reversed.
Reversed.
NOTES
[1] Section 212.01, Fla. Stat., F.S.A.
[2] Section 212.02(9), Fla. Stat., F.S.A.

"`Business' includes any activity engaged in by any person, or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect. The term `business' shall not be construed in this chapter to include occasional and isolated sales or transactions involving tangible personal property by a person who does not hold himself out as engaged in business, but shall include all charges of admission and all rentals and leases of living quarters, sleeping or housekeeping accommodations in hotels, apartment houses, rooming houses, tourist or trailer camps, as hereinbefore defined in this chapter, made subject to a tax imposed by this chapter."
[3] Section 212.02(2) Fla. Stat., F.S.A. "`Sale' means (a) any transfer of title or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever of tangible personal property for a consideration, * * *."
[4] Section 212.21, Fla. Stat., F.S.A. "Declaration of legislative intent. * * * (2) It is hereby declared to be the specific legislative intent to tax each and every sale, admission, use, storage, consumption, or rental levied and set forth in this chapter except as to such sale, admission, use, storage, consumption, or rental, as shall be specifically exempted therefrom, subject to the conditions appertaining to such exemption. It is further declared to be the specific legislative intent that should any exemption or attempted exemption from the tax or the operation or imposition of the tax or taxes be declared to be invalid, ineffective, inapplicable, unconstitutional or void for any reason, such declaration shall not effect [sic] the tax or taxes imposed herein but such sale, admission, use, storage, consumption or rental or any of them exempted or attempted to be exempted from the tax or taxes or the operation or the imposition of the tax or taxes, shall be subject to the tax or taxes and the operation and imposition thereof to the same extent as if such exemption or attempted exemption had never been included herein."
[5] Sections 212.17(4), 212.18(2) Fla. Stat., F.S.A.
[6] See footnote 3, supra.
[7] Vocelle v. Knight Brothers Paper Company, Fla.App. 1960, 118 So.2d 664. Section 212.02, Fla. Stat., F.S.A. begins as follows: "Definitions. The following terms and phrases when used in this chapter, shall have the meaning ascribed to them in this section, except where a context clearly indicates a different meaning * * *."
[8] See footnote 2, supra.